## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| BEVERLY WOOTEN, as Surviving Spouse of BARRY WYATT WOOTEN, Deceased, BEVERLY WOOTEN and BARRY WAYNE WOOTEN, as Co-Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased, | ) ) ) ) ) ) ) | |
|     Plaintiffs, | ) ) | CIVIL ACTION FILE NO.:_____ |
| v. | ) ) | |
| FORD MOTOR COMPANY and NEXTEER AUTOMOTIVE CORPORATION, | ) ) ) | **JURY TRIAL DEMANDED** |
|     Defendants. | ) ) | |

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs Beverly Wooten and Barry Wayne Wooten (hereinafter "Plaintiffs"), as Surviving Spouse of Barry Wyatt Wooten and as Co-administrators of the Estate of Barry Wyatt Wooten, by and through undersigned counsel, and hereby bring this Complaint for Damages and Demand for Jury Trial against Defendant Ford Motor Company ("Ford") and Defendant Nexteer Automotive Corporation ("Nexteer"), respectfully showing the Court as follows:

### I.      INTRODUCTION

1.

This is a civil tort action seeking recovery for the personal injuries and ultimate wrongful death suffered by Barry Wyatt Wooten ("Barry Wooten" or "Mr. Wooten") arising from a single automobile wreck that occurred on September 14, 2021 in Monroe County, Georgia, in which

Barry Wooten was severely injured and subsequently died as a result of a sudden steering system failure in his 2021 Ford F-150 ("the Subject Vehicle"), a vehicle which was designed, manufactured and sold by Defendant Ford as a complete vehicle, and which contained steering components that were designed and manufactured by Defendant Nexteer, a supplier chosen by Ford to supply components for the Ford vehicle.  Mr. Wooten is survived by his widow, Plaintiff Beverly Wooten, and adult children, Plaintiff Barry Wayne Wooten and Wendy Wooten Wells.

## II.       PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

2.

Plaintiff Beverly Wooten ("Plaintiff" or "Mrs. Wooten" herein) is a citizen and resident of the State of Georgia, residing at 22 Mallie Drive, Forsyth, Monroe County, Georgia.  She is the surviving spouse of Barry Wyatt Wooten, and a proper party to bring this personal injury action on Barry Wooten's behalf.  Aside from asserting a claim on behalf of Barry Wooten as his surviving spouse, Mrs. Wooten also asserts a claim as co-administrator on behalf of the Estate of Barry Wyatt Wooten, having been duly appointed the co-administrator of the Estate of Barry Wyatt Wooten via letters of administration issued on June 6, 2022 by the Probate Court of Monroe County, Georgia, the county in which Mr. Wooten resided prior to his death.  By filing this action, she avails herself of this Court's jurisdiction.

3.

Plaintiff Barry Wayne Wooten ("Plaintiff" or "Mr. Wayne Wooten" herein) is a citizen and resident of the State of Alabama.  Mr. Wayne Wooten also asserts a claim co-administrator on behalf of the Estate of Barry Wyatt Wooten, having been appointed the co-administrator of the Estate of Barry Wyatt Wooten via letters of administration issued on June 6, 2022 by the Probate

Court of Monroe County, Georgia, the county in which Mr. Wooten resided prior to his death.  By filing this action, he avails himself of this Court's jurisdiction.

4.

Defendant Ford Motor Company ("Ford") is a global corporation incorporated under the laws of Delaware with its principal place of business in Dearborn, Michigan.  At all relevant times, Ford was doing business in the State of Georgia and was designing, manufacturing, producing, promoting, advertising, and selling motor vehicles, including the 2021 Ford F-150, VIN 1FTFW1ED3MFB75128 involved in the incident that forms the basis of this Complaint.  Ford transacts business in this State, derives substantial revenue from business in the State of Georgia, and maintains a registered agent to transact business in this State.  Defendant Ford may be served by delivering Summons and the Complaint upon its registered agent, The Corporation Company, located at 106 Colony Park Drive, Suite 800-B, Cumming, Georgia 30040.  Venue is proper as to this Defendant under 28 USC 1391(b)(2) as a substantial part of the events that led to the death of Barry Wooten occurred in Monroe County, Georgia, which sits in the Middle District of Georgia, Macon Division.

5.

*Personal Jurisdiction over Ford: Georgia's Long-Arm Statute.*  Defendant Ford (either on its own and/or by and through its affiliated subsidiaries) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed tortious acts/omissions that caused injury in the State of Georgia.  Ford also maintains a registered agent to transact business in the State of Georgia, rendering it a "resident" of Georgia for purposes of personal jurisdiction under

Georgia law.  Under Georgia's long-arm statute (O.C.G.A. § 9-10-91), this Court has personal jurisdiction over Defendant Ford.

6.

*Personal Jurisdiction over Ford:  Due Process.*  Defendant Ford derives substantial revenue from sales of its motor vehicles and component parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia.  It shipped, or participated in shipping, the subject 2021 Ford F-150 and other motor vehicles and component parts with the knowledge, intent and/or reasonable expectation that they would find their way to Georgia through the stream of commerce.  Its business is affected by motor vehicle and component part sales in Georgia.  In fact, Ford (either on its own and/or by and through its affiliated subsidiaries) maintains at least ninety-three (93) certified Ford dealerships in the State of Georgia.  Ford systematically cultivates a market in Georgia for Ford F-150s, including Mr. Wooten's Ford F-150 which caused harm in Georgia.  Ford's actions in marketing and selling its vehicles and components to locations in Georgia, and maintaining numerous licensed dealerships and a registered agent in Georgia, should have led it to reasonably anticipate being haled into Court here.  In short, Ford has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.  Exercising personal jurisdiction over Ford in this Court comports with due process.

7.

Defendant Nexteer Automotive Corporation ("Nexteer") is a corporation incorporated under the laws of Delaware with its principal place of business in Auburn Hills, Michigan.  At all relevant times, Nexteer was doing business in the State of Georgia and was designing, manufacturing, and selling component systems and parts for use in motor vehicles, including

4

specifically the 2021 Ford F-150's steering system assemblies at-issue in this matter.  Nexteer transacts business in this State, derives substantial revenue from business in the State of Georgia, and maintains a registered agent to transact business in this State.  Defendant Nexteer may be served by delivering Summons and the Complaint upon its registered agent, C T Corporation System, located at 289 S. Culver Street, Lawrenceville, Georgia 30046.   Venue is proper as to this Defendant under 28 USC 1391(b)(2) as a substantial part of the events that led to the death of Barry Wooten occurred in Monroe County, Georgia, which sits in the Middle District of Georgia, Macon Division.

8.

*Personal Jurisdiction over Nexteer:  Georgia's Long-Arm Statute.*  Defendant Nexteer (either on its own and/or by and through its affiliated entities) transacts business in the State of Georgia, derives substantial revenue from goods purchased, sold, and/or used in Georgia, regularly does or solicits business in Georgia, and committed tortious acts/omissions that caused injury in the State of Georgia.  Nexteer also maintains a registered agent to transact business in the State of Georgia, rendering it a "resident" of Georgia for purposes of personal jurisdiction under Georgia statute.  Thus, this Court has direct personal jurisdiction over Defendant Nexteer as a resident of this State in addition to long-arm personal jurisdiction over Nexteer under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

9.

*Personal Jurisdiction over Nexteer:  Due Process.*  Defendant Nexteer derives revenue from sales of its motor vehicle steering systems and integrated components parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia.  It shipped, or participated in shipping, the subject 2021 F-150's steering system (including the

components used with and/or compromising said system parts) and other motor vehicle steering systems and component parts with the knowledge, intent and/or reasonable expectation that they could or would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle steering system and component part sales in Georgia. Nexteer's actions in marketing and selling its motor vehicle steering systems and components to businesses (such as Defendant Ford) and consumers located throughout the State of Georgia, and maintaining a registered agent in Georgia, should have led it to reasonably anticipate being haled into court here. In Short, Nexteer has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Nexteer in this Court comports with due process.

10.

This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

11.

Venue is proper in this Court pursuant to 28 USC 1391(b)(2) because all or a substantial part of the events or events giving rise to this claim occurred in Monroe County, Georgia, which sits in the Middle District of Georgia, Macon Division.

12.

This is an action related to tortious acts or omissions committed in and producing injury in this State and therefore the substantive and procedural law of Georgia applies to the claims asserted herein.

### III.   <u>OPERATIVE FACTS</u>

A.   *The Subject Single Automobile Wreck*

13.

The single automobile collision giving rise to this action occurred on September 14, 2021 at approximately 3:24 p.m. on Interstate 475/Georgia State Route 408 ("I-475") near exit 15 ramp in Monroe County, Georgia.  At that time, Barry Wooten was traveling northbound on I-475 and preparing to take the exit 15 ramp.  He was the sole occupant of his 2021 Ford F-150, was properly wearing his seat belt, and was acting prudently and with reasonable care at all times.

14.

As Mr. Wooten was proceeding to steer his vehicle to the right onto the exit ramp for exit 15, Mr. Wooten lost his ability to steer his vehicle when the vehicle's steering system suddenly failed to fully engage and properly steer the vehicle.  Instead of traveling to the right and onto the exit ramp, Mr. Wooten's vehicle traveled straight ahead onto the gore between I-475 and the I-475 exit 15 ramp.  Mr. Wooten's vehicle struck the stationary exit 15 sign and proceeded in a straight line from there, ultimately crashing into a large tree where the vehicle came to rest.

15.

As a result of the steering system's failure and the vehicle's frontal impact with the tree, Mr. Wooten's body suffered severe injuries.  Mr. Wooten was conscious and responsive, however, when the responding officers and paramedics arrived at the incident scene.  Mr. Wooten stated that he could hardly breathe, and his leg was hurting.

16.

Mr. Wooten was extricated from his vehicle and transported by ambulance to Atrium Health in Macon, Georgia, where he succumbed hours later to his severe and traumatic injuries after a period of severe mental and physical pain and suffering.

17.

Due to the defective design and/or manufacture of the Subject Vehicle and the negligence of the Defendants, the steering system of Mr. Wooten's 2021 Ford F-150 failed to respond to his steering inputs, which caused Mr. Wooten's vehicle to travel off the highway and crash into a large tree despite his attempts to steer the vehicle safely onto the exit ramp.

18.

The statement in paragraph 17 above is confirmed by data retrieved from the Subject Vehicle's Event Data Recorder ("EDR Data").   Based on the EDR data, Mr. Wooten began increasing steer inputs (i.e., inputs to the steering wheel in the truck) approximately 2.9 seconds before the crash and continued to attempt to steer up to the moment of the crash, including steering inputs of over 80 degrees at multiple points in time before the crash and a steer input of 84.1 degrees in the millisecond before impact.   Had the steering system been functioning properly, the vehicle should have responded to those inputs and moved to the right, away from trees ahead of it and into a safe grassy area along side of the highway.   But that did not happen.   Photographs of the scene depict tire travel marks visible in the grass leading to the tree that are straight with no sign of yawing or turning, which demonstrates that though the steering wheel was turned hard to the right, the vehicle's tires were not responding to that input and remained in a straight position, allowing the vehicle to travel straight into the tree rather than steer to safety.   Clearly, Mr. Wooten

was trying hard and for nearly three seconds to steer the vehicle away from harm, but the steering system failed to operate properly, leading to this crash.

19,

The visible, straight tire marks visible in the grass leading up to the tree are likely to be or may be explained by the fact that in addition to attempting steering inputs to avoid harm, Mr. Wooten also engaged the vehicle's anti-lock braking system (ABS) starting 2.5 seconds before impact and continued to engage the braking system all the way to the time of impact, which is also confirmed by the EDR report from the subject vehicle.

20.

The EDR data demonstrating variable hard steering inputs in the seconds before the crash as well as engagement of the ABS system during those same seconds also demonstrate that Mr. Wooten was conscious, had become aware of the danger of the situation confronting him, and was actively attempting to react to and save himself in an emergency situation – meaning he was not suffering from any loss of consciousness or physical inability to attempt to operate the vehicle before the crash with the tree occurred.  The fact that Mr. Wooten was steering and braking but unable to steer the vehicle away from harm also supports a conclusion that the moments *before* impact with the tree would have also been terrifying for Mr. Wooten, supporting his claim for pre-impact fright, shock, terror and mental suffering.

21.

At all relevant times, it was known to Defendant Ford and Defendant Nexteer that it is essential that all component parts of the vehicle — especially the steering system — perform without substantial failure so that there was no increase in the likelihood of collisions.

22.

As a direct and proximate result of the crash caused by the sudden manifestation of this steering system defect, Mr. Wooten suffered severe personal injuries and conscious pre- and post-impact pain and suffering, ultimately resulting in his death hours later.

*B. The Subject 2021 Ford F-150*

23.

The 2021 Ford F-150, VIN No. 1FTFW1ED3MFB75128, a pickup truck, was designed, tested, manufactured, assembled, imported and/or distributed, marketed, sold and placed into the stream of commerce as a complete product by Defendant Ford.

24.

Pleading in the alternative as permitted by Fed. R. Civ. P. 8, the steering system assembly and steering system components of the 2021 Ford F-150 were designed and manufactured by either Ford and/or Nexteer, or collectively by some combination of these two Defendants actively working together.   Mr. Wooten purchased his Ford F-150 new and he was the only owner of the vehicle prior to the subject incident.  Prior to his death, Mr. Wooten was actually employed as the national director of service and parts for Five Star Automotive Group, which includes Ford dealerships within the state of Georgia; he knew how to properly maintain a Ford vehicle, and had in fact kept the subject vehicle in good repair and maintenance prior to the subject crash.

25.

The Subject Ford F-150 was manufactured in May of 2021 in Ford's Dearborn Truck Assembly Plant and first sold for use by a consumer after that date.  This action is, thus, commenced less than (10) years from the date of the first sale for use of the vehicle.  It is also

commenced less than two years from the date of the subject incident, September 14, 2021, giving rise to this claim.

26.

Upon information and belief, Defendant Ford sets the specifications, tolerances, and other criteria for the design of its vehicles, including component systems and parts, and Defendant Nexteer designs and manufactures component parts for Ford vehicles, including the subject vehicle and the subject steering system assembly, to meet those base specifications and tolerances. Nexteer was, thus, actively involved in designing and manufacturing the steering system assemblies (including the ball nut retainer and related components) in concert with Ford, and presumably offered input on the final design of the steering system assemblies during the manufacturing process.  The extent to which Ford and Nexteer collaborated in the design and manufacture of the steering system assemblies will be further developed in discovery, but it is clear that they both jointly and collectively had design and manufacturing input into the system that failed Mr. Wooten.

27.

As expressly permitted by F.R.C.P. 8, Plaintiffs allege that Defendant Ford and Defendant Nexteer are individually and collectively responsible for the design and manufacture of the steering system of the Subject Vehicle and for all warnings and consumer information related thereto.

28.

As with any of its vehicles, Defendant Ford, as the designer and manufacturer of the complete vehicle, designed and obtained components for the Subject Vehicle from a variety of suppliers which Ford selected and contracted with to provide parts or components made to Ford's design and/or manufacturing specifications.  Those parts and components were then assembled,

either in whole or in part in collaboration between Ford and Nexteer, and the completed vehicle was manufactured and sold by Ford, as a Ford product sold under its Ford brand.

29.

Defendant Ford, as the designer and manufacturer of the completed vehicle, placed the Subject Vehicle into the stream of commerce and is legally responsible for the failures of any systems or components, whether designed by Ford or obtained from component suppliers, that make up the completed vehicle.

30.

Defendant Nexteer, as the designer and manufacturer (either in whole or in part) of the component parts of the steering system of the Subject Vehicle, placed them into the stream of commerce and is legally responsible for defects or negligence that led to their failure.

31.

Upon information and belief, the Subject Vehicle had not been materially altered or modified from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by Defendant Ford.  More specifically, upon further information or belief, no person or entity had modified or altered in any way the steering system assembly or any of its component or sub-component parts from the condition it was in at the time it was designed, manufactured and placed into the vehicle as the result of the concerted efforts of both Defendants.

32.

It was, at all relevant times, known to Defendant Ford that its vehicles needed to be without defect and fit for their intended uses when used on public highways and that it is essential that all component parts of the vehicle perform without failure so as to prevent grievous injuries caused by collisions due to such vehicle failures.

33.

It was, at all relevant times, also known to Defendant Nexteer that the component parts of the steering system it helped design and manufacture in concert with Defendant Ford needed to be fit for their intended uses on public highways and that it is essential that all component parts of the vehicle perform without failure so as to prevent grievous injuries caused by collisions due to such component part failures.

34.

However, here Defendant Ford and Defendant Nexteer either designed and/or manufactured the vehicle and/or steering system in a defective way such that the vehicle and/or steering system did not respond to Mr. Wooten's active steering inputs while attempting to drive the Subject Vehicle onto an exit ramp.

35.

Defendant Ford and Defendant Nexteer also failed to provide adequate warnings to reasonably foreseeable users or consumers of the Ford F-150 so that they could properly evaluate the risks in using such a vehicle and such component parts prior to purchase and use of the product.

36.

As detailed below, Defendant Ford and Defendant Nexteer are joint tortfeasors with respect to the injuries and other damages suffered by Barry Wooten, in an amount to be determined by the enlightened conscience of the jury, but, under any scenario, in an amount in excess of the minimum amount necessary to confer jurisdiction in this Court.

C. *Defendants' Knowledge of the Steering Defect – Ford's 2021 Steering Gear Recall*

37.

On or before May 29, 2021, Ford initiated a recall campaign on certain 2021 Ford F-150s concerning a steering gear defect.  On May 29, 2021, Ford also submitted a Recall Report of the

steering defect to the NHTSA (NHTSA Recall No. 21V-407 and Ford Recall No. 21S28). According to the Recall Report, suppliers performed various inspections due to several customer warranty claims concerning steering issues with 2021 Ford F-150 models. The supplier inspections found that customer returned steering gears had an internal component—referred to as a nut ball retainer—within them that were broken and displaced. As noted in the Recall Report, a broken ball nut retainer can allow the balls within the ball nut assembly to displace and wedge. Such condition could cause the ball nut not to rotate, resulting in a failure to properly steer the vehicle.

38.

As stated in Ford's Recall Report, nearly four months before Barry Wooten's tragic death, Ford recalled approximately two hundred and twenty (220) 2021 Ford F-150 models, manufactured at Dearborn Truck Assembly Plant from November 4, 2020 through May 20, 2021 and Kansas City Assembly Plant from October 29, 2020 to April 15, 2021. As indicated in the Recall Report, "[w]hen operating affected vehicles, it is possible that the steering may lock causing a complete loss of steering control," which may increase the risk of a crash. Further, Ford stated that "[t]his damage to the steering gear may result in increased steering efforts and the potential to not be able to turn the steering wheel while driving, increasing the risk of a crash." The Recall Report states that "[t]he vehicles in this program are not to be driven until this repair has been performed."

39.

Upon information and belief, Defendant Nexteer also had knowledge of the safety defect concerning steering assemblies in certain 2021 Ford F-150s. As stated in Ford's Recall Report,

"review of the steering gear supplier's assembly processes and production records identified an assembly concern at one of their two facilities that produces these gears."

40.

Also, on June 1, 2021, Ford sent correspondence to Ford and Lincoln Dealers to notify the dealers of the "Do Not Drive Vehicles" and instructions to replace the steering gear of the affected vehicles pursuant to Ford's Safety Recall 21S28.

41.

On or before December 16, 2021, nearly three months after Mr. Wooten's tragic death, Ford initiated yet another recall campaign for the Subject 2021 F-150 (NHTSA Recall No. 21V-986 and Ford Recall No. 21S56) concerning a safety defect that may cause the driveshaft to fracture. According to that Recall Report, "[a] fractured driveshaft may result in loss of motive power while driving, unintended vehicle movement while the vehicle is in park if the parking brake is not applied and may result in secondary damage to surrounding components. A fractured driveshaft may also contact the ground which may cause loss of control of the vehicle while driving which increases the risk of injury or crash."

42.

Upon information and belief, the steering system of Mr. Wooten's 2021 F-150 — which was manufactured in May 2021 at Dearborn Truck Assembly Plant — was part of the same product line or platform, and was identical or substantially similar in design and/or manufacture to the steering system components that were identified in Ford's Recall Report concerning Recall 21S28, and suffered the same or substantially similar internal damage or failure mode to the steering system components that were identified in Ford's Recall.

15

## IV.    LEGAL CLAIMS

### COUNT ONE
### (Ford—Defective Design)

43.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

44.

As a product designer, Ford is strictly liable for defects in its products which cause harm to consumers as a result of such defects, and as such Ford had at all relevant times a duty to the public and to Mr. Wooten to design products free of defects and unreasonable risks of harm to owners, users, and occupants.

45.

When Ford designed the Subject Vehicle, including its steering system assemblies in whole or in part with Nexteer, it knew, or should have known through its own testing, studies, and other real-world incidents, that the steering system failed to operate properly which could increase the risk of severe injury caused by a steering failure.

46.

Ford is strictly liable under Georgia products liability law for designing the steering system of the 2021 Ford F-150 without sufficient strength and structural integrity to withstand normal and foreseeable driving maneuvers without premature internal breakage or other defects resulting in sudden steering wheel locking, loss of steering wheel control, and/or total steering wheel failure. Ford instead chose a steering system that lacks adequate design features which increases the likelihood of an unavoidable accident caused by a sudden steering system failure.

47.

When the F-150 left Ford's control, Ford had unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative designs of the steering system that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the F-150.  In short, the subject Ford vehicle is defective by design under factors recognized in Georgia because the risks of the chosen design outweighed the utility of the design.

48.

The Plaintiffs' claims are based on characteristics of the 2021 Ford F-150 that can be eliminated without substantially compromising its usefulness or desirability.  Ford failed to warn the public of those dangers, and thus the product was additionally defective in its design because it lacked adequate warnings to allow consumers to make informed decisions about the purchase and use of the product.

49.

As a direct and proximate result of the defective design of the subject vehicle and steering system assemblies by Ford, the Plaintiffs suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

50.

Defendant Ford is liable, along with Defendant Nexteer, for the Subject Vehicle's design defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable by Plaintiffs under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT TWO**
**(Ford—Negligence)**

51.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

52.

As a designer and manufacturer of consumer vehicles, Ford owed and owes duties of reasonable care to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to design and manufacture vehicles that are not defective, which are reasonably safe for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of dangers of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

53.

At all relevant times, Ford knew that it was reasonably foreseeable that vehicle owners and users would operate Ford vehicles on the roadway.  Ford knew that proper steering systems, comprised of robust component parts, are essential to the drivability and safety of its vehicles on the roadway.  Despite its knowledge of the need of robust steering system components parts to withstand normal and reasonably foreseeable driving maneuvers, Ford failed to provide them. Ford breached its duties of reasonable care by designing a dangerous and defective vehicle that was unsafe and not free of defects, such as the steering defect, which would make a collision unavoidable in reasonably foreseeable events and by failing to adequately warn of dangers known to Ford.

54.

Ford also owed a duty and continuing duty to provide to the public, including Barry Wooten, with sufficient warnings to protect the interests of those reasonably foreseeable users or

18

consumers who would, based on their own reasonable assessments of the risks and benefits, decline product use or consumption.

55.

Ford breached its duty by failing to provide warnings sufficient to provide a complete disclosure of the existence and extent of the risks involved with using the Ford F-150.

56.

As a direct and proximate result of Ford's negligent breaches of its duties, Plaintiffs suffered damages in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

57.

Defendant Ford is liable, along with Defendant Nexteer, for its negligence in causing or contributing to the severe injuries and death of Barry Wooten and all damages that are recoverable by Plaintiffs under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT THREE**
**(Ford—Manufacturing Defect)**

58.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

59.

Plaintiffs contend that Mr. Wooten's severe injuries and death were caused by a design defect in the Ford F-150, but plead in the alternative, as permitted by F.R.C.P. 8, to the extent Mr. Wooten's injuries and death were not caused by a design defect, they were instead caused as a result of the Subject Vehicle or its steering system assemblies being manufactured in such a way as to not be without defects, including but not limited to, inadequate structural integrity and

19

robustness of component parts to withstand normal and reasonably foreseeable driving maneuvers without premature internal breakage leading to steering failures.

60.

As a product manufacturer, Ford owed and owes duties to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to exercise reasonable care in manufacturing a product that is reasonably safe for its intended or foreseeable uses.  Ford is strictly liable for all manufacturing defects in its products which cause harm to consumers as a result of such defects, and as such Ford had at all relevant times a duty to the public and to Mr. Wooten to manufacture products free of defects and unreasonable risks of harm to owners, users, and occupants.

61.

To the extent the defect resulted from a manufacturing failure rather than design defect, Ford is strictly liable under Georgia products liability law for manufacturing the 2021 Ford F-150 and its steering system assemblies without sufficient strength and structural integrity to withstand normal and reasonably foreseeable driving maneuvers without premature breakage of component parts resulting in sudden steering wheel locking, loss of steering control, and/or total steering wheel failure.

62.

Despite its knowledge of the need for robust components and sub-components of the steering system to provide consumers with a safe and reliable vehicle, Ford failed to provide them. To the extent the resulting lack of sufficient strength or structural integrity exhibited by the Subject Vehicle resulted from a manufacturing failure rather than from the design of the Subject Vehicle itself, Ford breached its duties of reasonable care by manufacturing the Subject Vehicle in such a

way that it deviated from its intended design, making it more dangerous than it would have been if manufactured as specified.

63.

As a direct and proximate result of Ford's deviation in manufacturing the Subject Vehicle from its intended design, to the extent the Subject Vehicle's defect resulted from a manufacturing rather than design defect, Plaintiffs suffered damages in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

64.

Defendant Ford is liable, along with Defendant Nexteer, for any manufacturing defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT FOUR**
**(Nexteer—Defective Design)**

65.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

66.

As a product designer, Defendant Nexteer is strictly liable for defects in its products which cause harm to consumers as a result of such defects, and as such Nexteer had at all relevant times a duty to the public and to Mr. Wooten to design products free of defects and unreasonable risks of harm to owners, users, and occupants.

67.

When Nexteer designed the Subject Vehicle's steering system assemblies in whole or in part with Ford, it knew, or should have known through its own testing, studies, and other real-

world incidents, that the steering system failed to operate properly which could increase the risk of severe injury caused by a steering failure.

68.

Nexteer is strictly liable under Georgia products liability law for designing the steering system of the 2021 Ford F-150 without sufficient strength and structural integrity to withstand normal and foreseeable driving maneuvers without premature internal breakage resulting in sudden steering wheel locking, loss of steering wheel control, and/or total steering wheel failure.  Nexteer instead chose and/or manufactured a steering system that lacks adequate design features which increases the likelihood of an unavoidable accident caused by a sudden steering system failure.

69.

When the Subject Vehicle's steering system left Nexteer control, Nexteer had unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative designs of the steering system that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the vehicle's steering system.  In short, the Subject Vehicle's steering system is defective by design under factors recognized in Georgia because the risks of the chosen design outweighed the utility of the design.

70.

The Plaintiffs' claims are based on characteristics of the 2021 Ford F-150 steering system manufactured by Nexteer (in collaboration with co-Defendant Ford) that can be eliminated without substantially compromising its usefulness or desirability.  Like Ford, Nexteer failed to warn the public of those dangers, and thus the product was additionally defective in its design because it

lacked adequate warnings to allow consumers to make informed decisions about the purchase and use of the product.

71.

As a direct and proximate result of the defective design of the subject vehicle's steering system assemblies by Nexteer, the Plaintiffs suffered damages in an amount greatly in excess of this Court's jurisdictional minimum.

72.

Defendant Nexteer is liable, along with Defendant Ford, for the Subject Vehicle's design defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT FIVE**
**(Nexteer—Negligence)**

73.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

74.

As a designer of component systems or parts for motor vehicles, Nexteer owed and owes duties of reasonable care to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to design and/or manufacture component systems or parts that are not defective, which are reasonably safe for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of dangers of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

75.

At all relevant times, Nexteer knew that it was reasonably foreseeable that vehicle owners and users would operate Ford vehicles on the roadway that were equipped with Nexteer-supplied components.  Nexteer knew that proper steering systems, comprised of robust component parts, are essential to the drivability and safety of vehicles on the roadway.  Despite its knowledge of the need for robust steering system components to withstand normal and reasonably foreseeable driving maneuvers without premature internal breakage, Nexteer failed to provide them.  Nexteer breached its duties of reasonable care by designing dangerous and defective component parts that were unsafe, which would make a collision unavoidable in reasonably foreseeable events and by failing to adequately warn of dangers known to Nexteer.

76.

Nexteer also owed a duty and continuing duty to provide to the public, including Barry Wooten, with sufficient warnings to protect the interests of those reasonably foreseeable users or consumers who would, based on their own reasonable assessments of the risks and benefits, decline product use or consumption.

77.

Nexteer breached its duty by failing to provide warnings sufficient to provide a complete disclosure of the existence and extent of the risks involved with using the steering system components.

78.

As a direct and proximate result of Nexteer's negligent breaches of its duties, Plaintiffs suffered damages in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

79.

Defendant Nexteer is liable, along with Defendant Ford, for its negligence in causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable by Plaintiffs under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

## COUNT SIX
### (Nexteer—Manufacturing Defect)

80.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

81.

Plaintiffs contend that Mr. Wooten's severe injuries and death were caused by a design defect in the Ford F-150, but plead in the alternative, as permitted by F.R.C.P. 8, that to the extent his injuries were not caused by a design defect, they were instead caused as a direct result of the steering system assemblies being manufactured in such a way as to not be without defects, including but not limited to, inadequate structural integrity and robustness of component parts to withstand normal and reasonably foreseeable driving maneuvers without premature internal breakage leading to steering failures.

82.

As a product manufacturer/component supplier, Defendant Nexteer owed and owes duties to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to exercise reasonable care in manufacturing a product that is reasonably safe for its intended or foreseeable uses.  Nexteer is strictly liable for all manufacturing defects in its products which cause harm to consumers as a result of such defects, and as such Nexteer had at all relevant times a duty to the

public and to Mr. Wooten to manufacture products free of defects and unreasonable risks of harm to owners, users, and occupants.

83.

To the extent the defect resulted from a manufacturing rather than design defect, Nexteer is strictly liable under Georgia products liability law for manufacturing the components of the steering system that were installed in the 2021 Ford F-150 without sufficient strength and structural integrity to prevent internal breakage resulting in sudden steering wheel locking, loss of steering control, and/or total steering wheel failure during ordinary and foreseeable driving situations.

84.

Despite its knowledge of the need for robust components and sub-components of the steering system to provide consumers with a safe and reliable vehicle, Nexteer failed to provide them.  To the extent the resulting lack of sufficient strength or structural integrity exhibited by the Subject Vehicle resulted from a manufacturing rather than from a design defect of the steering system installed in the Subject Vehicle itself, Nexteer breached its duties of reasonable care by manufacturing the components of the steering system in such a way that it deviated from its intended design, making it more dangerous than it would have been if manufactured as specified.

85.

As a direct and proximate result of Nexteer's deviation in manufacturing the components of the steering system from their intended design, to the extent the steering system's failure resulted from a manufacturing rather than design defect, Plaintiffs suffered damages in an amount well in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

26

86.

Defendant Nexteer is liable, along with Defendant Ford, for any manufacturing defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT SEVEN**
**(Ford and Nexteer—Punitive Damages)**

87.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

88.

Prior to the Subject Vehicle's design, manufacture, and sale, due to Ford and Nexteer's knowledge of existing circumstances and conditions, Ford and Nexteer knew that the steering system and its components were inadequately designed using material lacking strength and robustness that it could cause the components to break resulting in sudden steering failure. Despite this knowledge, Ford and Nexteer manufactured and sold the Subject Vehicle, installed with the defective component parts of the steering system, that lacked strength and robustness so as to prevent a steering failure and cause unavoidable collision. Defendant Ford and Defendant Nexteer failed to warn Mr. Wooten of its unreasonably dangerous designs.

89.

Plaintiffs believe and contend that discovery in this case will result in the production and identification of additional information and documents from Defendants that will show that they were both fully aware of dangers and defects in the steering system of 2021 Ford F-150 trucks manufactured at the Dearborn Truck Assembly plant and that the defects extended beyond the mere 220 vehicles that were recalled for a steering defect. Plaintiffs contend that Ford and

27

Nexteer consciously limited the number of 2021 Ford F-150 vehicles manufactured in May 2021 for monetary and public relations reasons, and that had Ford and Nexteer not demonstrated an entire lack of care and diligence regarding other vehicles made in the same plant and at the same time period as the subject vehicle then Mr. Wooten would have been provided notice and warning of said defects and could have taken action to have them corrected via the recall, such that this incident would have never occurred.

90.

Plaintiffs also allege, and expect discovery to further reveal, that as the result of other incidents or reported events of steering failure before the subject incident that Ford and Nexteer had sufficient actual knowledge to take action to warn and protect persons like the Plaintiffs' decedent, Barry Wooten, but instead demonstrated clearly and convincingly a conscious indifference to safety to as to give rise to a jury award of punitive damages.

91.

As a result of Ford and Nexteer's conscious disregard for the rights and safety of Mr. Wooten and/or Ford and Nexteer's willful and wanton conduct described in detail in all paragraphs above, Mr. Wooten suffered catastrophic injuries, extreme physical, mental, and emotional pain and suffering, and death, and both Defendants should be required to pay punitive damages in an amount that comports with the United States and Georgia constitutions and law, but is sufficient to punish them and deter them from similar future misconduct, with such amount to be determined by the enlightened conscience of the jury upon consideration of the evidence adduced at trial.

## V. <u>DAMAGES SOUGHT BY PLAINTIFFS</u>

92.

Plaintiffs seeks to recover from Defendants for every element and category of damages permitted under Georgia law to which they are entitled to, including but not limited to:

(a)    Plaintiff Beverly Wooten, as Surviving Spouse of Decedent Barry Wooten, seeks damages for the full value of the life of Barry Wooten, both economic, non-economic, tangible and intangible, in an amount to be determined by the enlightened conscience of the jury after hearing the evidence at trial;

(b)    Plaintiffs Beverly and Wayne Wooten, as co-administrators of the Estate of Mr. Wooten, seek damages for the physical and emotional pain and suffering, shock, fright and terror endured by Mr. Wooten in the seconds before impact, during impact, and from the time of impact up until the time of his death, in an amount to be determined by the enlightened conscience of the jury after hearing the evidence at trial;

(c)    Plaintiffs Beverly and Wayne Wooten, as co-administrator of the Estate of Mr. Wooten, seek damages for all medical expenses, funeral expenses, and property damage incurred by the Estate, in an amount which reflects the reasonable value of those expenses and property based upon the evidence to be presented at trial;

(d)    Plaintiffs Beverly and Wayne Wooten, as co-administrator of the Estate of Mr. Wooten, seek punitive damages to which the Estate of Barry Wooten is entitled to recover, in a constitutionally appropriate amount determined by the enlightened conscience of the jury to be sufficient to punish, penalize, and deter Defendants

29

Ford and Nexteer for its past misconduct and to deter them from engaging in similar misconduct in the future.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray:

(a)     That summons issue requiring Defendant Ford and Defendant Nexteer to appear and Answer this Complaint as provided by law;

(b)     That Plaintiffs have a trial by jury;

(c)     That Plaintiffs recover from Defendants all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under Georgia law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscious of the jury at trial;

(d)     That punitive damages be awarded against Defendants Ford and Nexteer;

(e)     That all costs be taxed against Defendants; and

(f)     For such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted, this 8th day of June, 2022.

**CONLEY GRIGGS PARTIN LLP**

/s/ *Cale Conley*
CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530
L'ZANDRA JONES
Georgia Bar No. 305294

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:     (404) 467-1155
Facsimile:     (404) 467-1166
cale@conleygriggs.com
davis@conleygriggs.com
zan@conleygriggs.com

**CHEELEY LAW GROUP, LLC**
ROBERT D. CHEELEY
Georgia Bar No. 122727

2500 Old Milton Parkway, Suite 200
Alpharetta, GA  30009
Telephone:     770-814-7001
bob@cheeleylawgroup.com

**ATTORNEYS FOR PLAINTIFFS**